## Great Atlantic & Pacific Tea Company v. Sexton.

(Decided February 2, 1932.)

C. W. NAPIER, M. K. EBLEN and CARROLL & McELWAIN for appellants.

CRAFT & STANFILL for appellee.

OPINION OF THE COURT BY CREAL, COMMISSIONER— Reversing.

The Great Atlantic & Pacific Tea Company, hereinafter called the company, operates a store in the city of Hazard, and connected therewith is a meat market in which Dennis Sexton was formerly employed. Sexton instituted this action in the Perry circuit court against the company and Claude Collins, manager of the meat market.

He alleges in his petition that, on December 17, 1929, while skinning and dressing a shipment of rabbits for the company, and under the orders and direction of Collins, he contracted the disease technically known as tularæmia, but commonly called rabbit fever; that by reason of this disease he has suffered, and will continue to suffer great bodily pain and mental anguish, and that his health has been greatly and permanently impaired. He claims that the company and the manager of the meat market were negligent, in that they knew, or by the exercise of ordinary care could have known, that the rabbits were infected with the disease, and that they ordered him to dress the rabbits without warning him of the danger in so doing; that he did not know, and by the exercise of ordinary care could not have known, that the rabbits were so infected, or that it would endanger his health to dress and prepare them for market.

The defendants by answer traversed the allegations of the petition, and in a second paragraph it is alleged by the company that on March 27, 1930, it reached an agreement with plaintiff whereby it paid to him the sum of $65 which he agreed to accept in full satisfaction of all claims of every sort growing out of the injuries complained of in his petition.

In a third paragraph the company alleges that it had elected to and was operating under the Workmen's Compensation Act of Kentucky (Ky. Stats., secs. 4880-4987) when plaintiff sustained his alleged injuries, and

that he was working as an employee of the company, and as such had accepted the provisions of that act.

By reply, appellee controverted the affirmative allegations of the answer, and admitted that he had been paid $65 by the company. He stated that this sum was not paid him in satisfaction of his alleged injuries, but as wages, and that his signature to any papers purporting to be a settlement of his claim for injuries was procured through fraud and misrepresentation.

Pleas of contributory negligence and assumed risk were set up by way of an amended answer which by agreement was controverted of record, and the issues were completed by rejoinder traversing the affirmative allegations of the reply.

On final hearing, the jury returned a verdict for plaintiff in the sum of $5,000, and, from a judgment based thereon against the company, this appeal has been prosecuted.

From the evidence of appellee, it is made to appear that, at the time he dressed the rabbits, there was a small abrasion or scratch on one of his fingers which he suffered while splitting kindling at home. When ordered by Mr. Collins to dress the rabbits, he mentioned the cut on his finger, and stated that he was afraid of "that disease," but Collins directed him to go ahead and dress them. The livers of some of the rabbits were enlarged and of a brownish color, spotted with white. On December 20, he was stricken with headache, and sore throat, accompanied by high fever, and on the following day his suffering had become so intense he consulted Dr. Boggs. His injured finger at the time had become inflamed and badly swollen, and, together with other pus gatherings on his arms and neck, was lanced several times by physicians. Since stricken with this disease, he has been incapacitated to perform labor. Drs. Coldiron and Boggs testified that Sexton was suffering from tularaemia and with enlargement of the glands and cirrhosis of the liver and spleen caused by that disease, and that it has resulted in the permanent impairment of his health.

The evidence shows that the company had elected to operate under the provisions of the Workmen's Compensation Act, and that appellee as its employee had accepted the provisions of the act. There is a conflict in evidence in regard to the alleged settlement of the claim when appellee accepted from the company the sum of $65.

Collins testified that appellee made no complaint to him about a cut upon his finger and made no protest against skinning the rabbits. He stated that he had no knowledge of the rabbits being infected with disease, and appellee said nothing to him at the time, but made some mention of it after he claimed to have become infected therewith.

The first question presented for determination is whether appellee's alleged injury is compensable under the first section of our Workmen's Compensation Act, section 4880, Kentucky Statutes. To hold that it is would obviate the necessity of giving consideration to any other question presented. So much of the section as is pertinent reads:

> "This act . . . shall affect the liability of the employers subject thereto to their employees for personal injuries sustained by the employee by accident arising out of and in the course of his employment, or for death resulting from such accidental injury; provided, however, that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident. . . ."

If appellee's injury comes within the exception to the proviso in the quoted language of the statute, and his disease is the natural and direct result of traumatic injury by accident, then the circuit court was without jurisdiction to hear and determine the matter so far as the company is concerned, but, if not so included, he is pursuing the proper remedy.

Generally speaking, the word "accident" is held to mean an unusual, unexpected, and undesigned event, happening without negligence. Chicago Veneer Co. v. Jones, 143 Ky. 21, 135 S. W. 430; Held v. Commonwealth, 183 Ky. 209, 208 S. W. 772. But, as used in the Workmen's Compensation Act, it is held to mean the happening of such event with or without negligence. Grannison's Adm'r v. Bates & Rogers Construction Co., 187 Ky. 538, 219 S. W. 806; Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S. W. 152, 13 A. L. R. 524.

Webster defines "accident" as

> "An event that takes place without one's foresight or expectation. An undesigned, sudden and

unexpected event . . . happening by chance or unexpectedly taking place not according to the usual course of things.''

If an injury is suffered in the course of employment, unexpectedly, and without design, and can be traced to a definite time, place, and cause, it is an accident within the popular sense of that term and as it is used in the compensation laws. Steel Sales Corporation v. Industrial Com., 293 Ill. 435, 127 N. E. 698, 14 A. L. R. 274. Manifestly, appellee's injury was sustained by accident within the meaning of the section under consideration.

This brings us to a consideration of the more serious problem of determining whether the alleged infection or disease which appellee contracted is the ''natural and direct result of traumatic injury,'' within the meaning of the Workmen's Compensation Act; and necessarily this question must turn upon the meaning or construction to be given the words ''traumatic injury'' as used therein. Obviously, it was the intention of the Legislature in enacting this statute to exclude from its provisions, except as herein provided, what is known as ''industrial'' or ''occupational'' diseases, and all other diseases where the cause may not be traceable to traumatic injury received by accident in the course of employment.

In the case of Jellico Coal Co. v. Adkins, 197 Ky. 684, 247 S. W. 972, 974, the opinion quotes definitions of the words ''trauma,'' ''traumatic,'' and ''traumatism,'' and says:

''It will be observed that all these definitions of 'trauma' and 'traumatic' imply the presence of physical force, and this is the generally acepted meaning of the word.''

And in the later case of Straight Creek Fuel Co. v. Hunt, 221 Ky. 265, 298 S. W. 686, 687, after quoting the definitions from the foregoing opinion, it is said:

''Clearly, from these definitions, an internal injury resulting from an external force is a traumatic injury. . . . ''

Since the statute of no other state contains a provision identical with the quoted provisions of our statute, we are left without direct precedent from other jurisdictions. In the definitions of ''trauma'' as given by Webster and quoted in the foregoing opinions, we find the

following: "A wound or injury directly produced by causes external to the body."

It will be noted that this does not include within its scope and meaning only physical force in the sense of a blow, a current of electricity, or like terms implying power, vigor, violence, or energy in the commonly accepted meaning of those terms, but may be as consistently construed to include any independent influence or cause external to the body coming into direct contact with, and causing injury to, the physical structures thereof.

The Compensation Law of Pennsylvania (77 P. S., sec. 411) provides in part:

> "The terms 'injury' and 'personal injury' . . . shall be construed to mean only violence to the physical structure of the body, and such disease or infection as naturally results therefrom."

In the case of McCauley v. Imperial Woolen Co., 261 Pa. 312, 104 A. 617, 622, the court had for consideration a case where a wool sorter handled wool infected with anthrax germs. A small scratch on his neck came in contact with these germs, and, as a result, the disease was transmitted to him, causing his death. The court, after holding that this was an accident within the meaning of the Compensation Act, said:

> "When, however, death results from germ infection, to bring a case of this character within the act of 1915, supra, the disease in question must be a sudden development from some such abrupt violence to the physical structure of the body as already indicated, and not the mere result of gradual development from long-continued exposure to natural dangers incident to the employment of the deceased person, as in cases of occupational diseases, the risks of which are voluntarily assumed. Here the anthrax germ, a distinguishable entity, came into actual contact with the deceased, thus gaining an entrance into his body, and his neck began to swell and discolor; therefore the complaint from which McCauley died can be traced to a certain time when there was a sudden or violent change in the condition of the physical structure of his body, just as though a serpent, concealed in the material upon which he was working had unexpectedly and suddenly bitten him."

In the case of Hiers v. Hull & Co., 178 App. Div. 350-352, 164 N. Y. S. 767, 769, it appears that claimant was weighing hides, and anthrax germs contained therein were communicated to him through an abrasion on his hand, from which infection and disease followed. The court held this was an accident, and said:

"There is a broad distinction between the present case and the case of an occupational disease. The latter is incidental to the occupation, or is a natural outcome thereof. It is expected, usual, and ordinary. This disease incurred by the claimant was unexpected, unusual, and extraordinary, as much so as if a serpent concealed in the hides had attacked him. There is no difference in principle because the attack, instead of being made unexpectedly by a concealed serpent, was made unexpectedly by a concealed disease germ. There seems to be no question in this case but that the claimant contracted the disease in the manner and under the conditions above indicated. We think the circumstances constitute an accidental injury, within the meaning of the statute." Industrial Commission v. Roth, 98 Ohio St. 34, 120 N. E. 172, 6 A. L. R. 1463.

In this case, appellee's injuries may be traced directly to his coming in contact with meats laden with tularæmia germs. The time, the place, and the cause of the injury are determinable with reasonable certainty. As an immediate result of the contact, symptoms peculiar to the disease manifested themselves. It was not a gradual development arising out of natural dangers incident to the employment, but was sudden, unexpected, and unusual, without any of the distinctive features of an occupational disease.

This court, in harmony with the general trend of decisions in other jurisdictions, has consistently held that, where the language of the Compensation Act is ambiguous or of doubtful meaning, it should be liberally construed in favor of the employee, thus giving effect to its humane purposes. Phil Hollenbach Co. v. Hollenbach, supra; Bates & Rogers Construction Co. v. Allen, 183 Ky. 815, 210 S. W. 467; Frye's Guardian v. Gamble Bros., 188 Ky. 283, 221 S. W. 870; Blue Diamond Coal Co. v. Frazier, 229 Ky. 450, 17 S. W. (2d) 406.

With this fixed rule and policy of the court in mind, and after a careful consideration of the provisions of the act and the authorities bearing on the question, we have reached the conclusion that appellee's infection or disease is the natural and direct result of traumatic injury by accident sustained while in the course of his employment.

While it does not affirmatively appear in the record that the action was dismissed as to appellant's codefendant, Collins, the instructions which were offered by appellant and given by the court indicate that recovery was not sought against him. The judgment is against appellant alone, and neither side calls in question its correctness in that particular.

For the reasons indicated, the judgment is reversed, and cause remanded for another trial and proceedings consistent with this opinion.

Whole court sitting.