## Kentucky Stone Co. v. Phillips et al.

June 4, 1943.

Davis, Boehl, Viser & Marcus for appellant.

Shumate & Shumate for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE FULTON—Reversing.

The appellee, E. M. Phillips, filed his application for compensation against the appellant, Kentucky Stone Company, in December, 1940 with the Workmen's Compensation Board, claiming that on and before January 15, 1939 he "suffered permanent impairment of his lungs and body by reason of breathing limestone dust." The application was apparently based on the contraction of silicosis.

Immediately following the application he was examined by Dr. Heman Humphrey and Dr. Oscar O. Miller of Louisville who reported in writing that the applicant was not suffering from silicosis or tuberculosis. Dr. Miller's report stated "the findings are compatible with a mild tracheo bronchitis. I consider the patient is employable."

Following these reports an amended statement of claim was filed alleging that "while in the employ of the defendant" the applicant inhaled particles of dust and stone which physically injured his lungs and bronchial tubes so as to impair his ability to breathe, thereby disabling him.

The appellee's proof was heard before a referee and at the conclusion thereof the appellant moved to dismiss on the ground that no compensable injury was proven, reserving the right to offer proof if the motion should be overruled. The referee denied the motion and the appellant moved for a Full Board review. The Board overruled the referee's ruling and dismissed the claim, saying:

"We have read the testimony and it fails to establish the fact that the plaintiff had silicosis or any other injury or disease attributable to his work for the defendant."

On appeal to the Madison Circuit Court from the Board's order the court held that the case should be remanded to the Board. This appeal follows.

The appellee's proof was in substance as follows. He had worked for appellant in its quarries for about fourteen or fifteen years before he was transferred to the quarry at Tyrone on February 1, 1938. During the period of years he had worked in the quarries he inhaled limestone dust and dust from emery wheels. He was a powerful man, weighing approximately 230 pounds prior to July 1, 1938. On a day in June or July, 1938 the elevator hung and some sheet iron buckets were dented. He straightened the buckets with a sledge hammer and got very hot while so doing. He then went up on top of the crusher where he breathed limestone dust and cooled off quickly, started choking up, caught cold and could hardly breathe. He was off from work for several days. He started losing weight, going down to 175 pounds and

since then, according to his statement, he has "never had any breath to breathe."

In addition to the reports of Drs. Humphrey and Miller the only medical testimony is that of Dr. A. B. Hoskins. The latter diagnosed the case as silicosis. Upon the basis of the reports by the Louisville physicians counsel for appellee in his examination of Dr. Hoskins eliminated silicosis from consideration by the witness and propounded to him a hypothetical question in which it was assumed that the appellee had worked for years in limestone dust and in dust from emery wheels and that in June, 1938, after becoming rather hot and cooling off suddenly and breathing this dust, he immediately suffered from short breathing and loss of weight. Dr. Hoskins responded, "Well, that could be chronic bronchitis, or bronchitic asthma, and then, the dust could bring about bronchitis or bronchitic asthma pretty much the same way as it would bring about silicosis." He stated also that the metallic dust and limestone dust brings about physical injury to the lungs of some people. In response to a question as to what produced the appellee's asthmatic or bronchitic condition Dr. Hoskins, although he had diagnosed the case as silicosis, said: "I wouldn't know, just exactly." Later he stated that working in the dust could have brought it about. Finally, he stated it to be his opinion that the appellee's trouble was due to long exposure to dust, especially emery dust.

It is the contention of appellant that the Board's finding based on this evidence was conclusive and that the circuit court was in error in remanding the case, while appellee argues that the uncontradicted evidence conclusively established that he had sustained a compensable injury and that the Board's finding to the contrary was not sustained by any evidence.

It may well be doubted that there was any evidence of substance to the effect that the appellee's trouble was caused from breathing the limestone or emery dust since Dr. Hoskins steadfastly refused to express his opinion that the breathing of dust at the time appellee got hot and cooled off suddenly was the cause of his condition. The most he would say in this connection was that the trouble could have been thus caused. Certainly, in view of this situation, there was no evidence of substance that the appellee's trouble resulted from breathing the limestone dust while he cooled off quickly on the occasion.

referred to by him. But, in view of the statement finally made by Dr. Hoskins, under the stimulus of leading questions, that he diagnosed the trouble as being due to breathing dust especially emery dust, over a long period of time, we will, in considering the Board's ruling, assume that the evidence conclusively established this to be a fact. Section 4880 of the Kentucky Statutes (now KRS 342.005), defining compensable accidents and diseases, provides, "that personal injury by accident as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall they include the results of a pre-existing disease." Thus all diseases, occupational or otherwise, are excluded from the operation of the act unless caused by traumatic injury by accident. Smith et al. v. Standard Sanitary Mfg. Co., 211 Ky. 454, 277 S. W. 806. Therefore, even if we assume from Dr. Hoskins' statement (that breathing of dust causes physical injury to the lungs of some people) that the breathing of the dust over a period of years by the appellee resulted in traumatic injury to him, there yet remains the question whether such injury was accidental within the meaning of the statute.

In Great A. & P. Tea Co. v. Sexton, 242 Ky. 266, 46 S. W. (2d) 87, 89, in which we held that the disease of tularemia acquired by an employee, by reason of a pre-existing abrasion on his finger, while dressing rabbits was the result of a traumatic injury by accident, we said:

"If an injury is suffered in the course of employment, unexpectedly, and without design, and can be traced to a definite time, place, and cause, it is an accident within the popular sense of that term and as it is used in the compensation laws."

In the later case of Donohue v. Washington Nat. Insurance Co., 259 Ky. 611, 82 S. W. (2d) 780, 781, an accident was defined as "an undesigned, sudden and unexpected event, * * * happening by chance or unexpectedly, taking place not according to the usual course of things."

While we have never held explicitly that a disease to be compensable must be assignable to a determinate or single act, identified in space or time (although inferentially so holding in the Sexton case), the great weight of authority is to this effect.

In the Pennsylvania case of Mauchline v. State Insurance Fund, 279 Pa. 524, 124 A. 168, 169, the court said:

"To be an accident, within the Workmen's Compensation Law, the injury must usually result from some undesigned event occurring at a particular time. This condition would be met in the instant case had the emphysema resulted from inhaling the smoke and fumes on a single occasion, * * * but that is not shown. On the contrary, the medical evidence indicates that such condition is normally of slow development, and probably here came on gradually from continued contact with the smoke and fumes. If so, it was not an accident, but the result of an occupational disease, the risk of which the employee assumes and for which the statute provides no compensation."

See also to the same effect Peru Plow & Wheel Co. v. Industrial Commission, 311 Ill. 216, 142 N. E. 546; Morrison v. Tennessee Consolidated Coal Co., 162 Tenn. 523, 39 S. W. (2d) 272; Scheerens v. E. W. Edwards & Sons, 133 Misc. 616, 232 N. Y. S. 557; Lerner v. Rump Bros., 241 N. Y. 153, 149 N. E. 334, 41 A. L. R. 1122; Echord v. Rush, 124 Kan. 521, 261 P. 820, 826; Hendrickson v. Continental Fibre Co., 3 W. W. Harr., Del., 304, 136 A. 375; Young v. Melrose Granite Co., 152 Minn., 512, 189 N. W. 426, 29 A. L. R. 506; Renkel v. Industrial Commission of Ohio, 109 Ohio St. 152, 141 N. E. 834.

A few cases take the contrary view. See Victory Sparkler & Specialty Co. v. Francks, 147 Md. 368, 128 A. 635, 44 A. L. R. 363; Pero v. Collier-Latimer, Inc., 49 Wyo. 131, 52 P. (2d) 690; Aldrich v. Doe, 43 Idaho 30, 249 P. 87. In some of the cases adopting the minority view the holding was probably due to the peculiar phraseology of the statutes. In the annotation in 44 A. L. R. 371 it is pointed out that the decision in Victory Sparkler & Specialty Co. v. Francks, supra, is out of harmony with the majority of recent cases.

The majority view seems to us to be the sound one. It seems rather incongruous to say that an injury caused by breathing dust over a period of years is an accidental injury. To hold such an injury accidental would practically nullify the statute in this regard and open the door to compensation of occupational diseases, a result clearly not contemplated by the statute.

Had the medical testimony indicated that appellee's bronchitic condition resulted from inhaling dust on the occasion he claimed to have gotten hot and cooled off suddenly, a single occasion, it might with some plausibility be argued that the injury or disease was shown to be accidental. But the only definite statement of Dr. Hoskins connecting the appellee's condition with his employment was that it was caused by long exposure to dust. This being true, his condition was not the result of an accident but the result of an occupational disease, a risk assumed and for which no compensation is provided by the statutes.

Appellee relies strongly on Schabel et al. v. Riddell-Robineau Mfg. Co., 245 Ky. 409, 53 S. W. (2d) 750. There an employee inhaled sawdust while disconnecting pipes blowing sawdust into a furnace and this caused gangrene and pneumonia resulting in death a month later. This was held to be a compensable injury. But the distinction in that case and the one before us is obvious for there, as in the Sexton case, supra, the injury producing disease was traceable to a definite time, place and cause and did not occur over a long period of time.

In view of what has been said, it is apparent that the Board correctly denied compensation and dismissed the claim even though the evidence may be said to have established that the claimant was suffering with a disease which was in fact attributable to his employment, since such disease was not compensable. Even if the Board was unjustified in its finding that the appellee was not suffering from disease or injury attributable to his employment, it correctly ordered the claim dismissed since the utmost that the appellee's proof tended to establish was that he was suffering from a noncompensable injury or disease.

Reversed with directions to set aside the order remanding the case to the Board and to enter judgment affirming the Board's finding.