TRAILER CONVOYS, INC. and the Special Fund, Appellants,

v.

Louis HOLSCLAW, Individually, and on Behalf of Mary Louise Holsclaw, an Infant, and Workmen's Compensation Board, Appellees.

Court of Appeals of Kentucky.

Oct. 13, 1967.

James M. Graves, William P. Swain, Boehl, Stopher, Graves & Deindoerfer, Stuart E. Alexander, Jr., Louisville, for appellants.

Charles I. Sandmann, Allen Schmitt, Louisville, for appellee Holsclaw.

**EDWARD P. HILL, Judge.**

This is an appeal from a judgment of the Jefferson Circuit Court affirming an award by the Workmen's Compensation Board which allowed the deceased employee's dependents to recover full benefits.

The decedent, Charles William Holsclaw, was under contract with Trailer Convoys to drive his truck from Louisville, Kentucky, to Oakland, California. Two days after he left Louisville, in Santa Rosa, New Mexico, Holsclaw was found slumped over the wheel of his truck, which was in a line of trucks waiting for traffic interviews conducted by the New Mexico Highway Department. He was taken to a hospital where he died of a cerebral hemorrhage that same day. The Board found that Holsclaw had suffered from hypertension and arteriosclerosis for several years but that it was a dormant and nondisabling diseased condition. Both the doctor who diagnosed Holsclaw's death as a cerebral hemorrhage and the doctor who treated him for several years for hypertension testified that his death was caused by underlying arteriosclerosis and hypertension and that it was probably precipitated by the strain of driving 1200 miles in two days. The testimony of the two doctors is uncontradicted. The Board found that the contributing cause of decedent's death was twenty-five percent from the strain and exertion of his work in driving the truck and seventy-five percent from the pre-existing, dormant, nondisabling diseased condition.

The circuit court affirmed the Board's award, and the appellant now brings the case before this court to decide the question of whether the strain of the driving done by Holsclaw was sufficient trauma to make his death compensable under the Workmen's Compensation Act.

Appellant contends that because Holsclaw was found slumped over in the truck while it was not moving, the cerebral hemorrhage was not the natural and direct result of a traumatic injury by accident and is therefore not compensable under KRS 342.005(1). A review of previous cases will not support appellant's position.

In Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 (1961), this court held that a heart attack which occurred shortly after the decedent had been operating an air hammer was a compensable traumatic per-

sonal injury by accident. It should be noted that Grimes was resting, not working, at the time of the heart attack. Similarly, in Terry v. Associated Stone Co., Ky., 334 S.W.2d 926 (1960), this court allowed compensation where the Board found that the heart attack was caused in part by the strain of the work claimant was performing. The more recent case of Young v. Eastern Coal Corporation, Ky., 408 S.W.2d 464 (1966), allowed benefits to an employee who was totally disabled by a myocardial infarction resulting from the strain of his work. The claimant was supported by uncontradicted medical testimony that his disability was caused by both a pre-existing arteriosclerotic condition and the myocardial infarction. This court ordered the compensation apportioned between the employer and the special fund.

The case at bar falls within the cases cited above. There is uncontradicted medical testimony that Holsclaw suffered from a pre-existing but nondisabling condition which coupled with the strain of driving a truck 1200 miles in two days resulted in the cerebral hemorrhage. In *Grimes*, supra, the decedent was stricken while he was resting, and in *Terry*, supra, it was recognized that a strain may cause a disability or death when the person is resting or engaged in some routine activity. Therefore, the fact that Holsclaw was not actively engaged in driving should make no difference.

The Board has complied with that part of the *Grimes* decision which states 345 S.W.2d on page 51:

"[W]here a work-connected exertion precipitates or triggers a disability in which a pre-existing disease is the predominating cause the award should represent only the contribution of the injury to the disability."

In their reply brief, appellants repeat the argument used in their first brief. They cite one new case, Hutchinson v. Skilton Construction Co., Ky., 417 S.W.2d 142 (1967), where the court refused to recog-

nize claimant's argument that "mere presence on the job, accompanied by the stress and strain that goes with construction employment, is sufficient to support an award where death is caused by myocardial infarction, commonly referred to as heart attack."

The case at bar is easily distinguished from *Hutchinson*, supra, in which the testimony was indefinite as to whether the deceased did any work on the morning of his fatal attack. Also appellant in *Hutchinson* failed to meet the burden or proof required by *Grimes*, supra, where medical testimony established that death was work-connected.

In the case at bar there is testimony by two physicians that decedent's death was caused by underlying arteriosclerosis and hypertension but which was probably precipitated by the strain of his work.

The argument is made that this court has been wrong in its interpretation of trauma since *Grimes*, supra, in 1961. The rule of that case has now been followed for six years, during which time insurance rates have been adjusted and labor and management have learned to rely on it. The legal doctrine of *stare decises* provided certainty, stability, and predictability in the conduct of business. We believe that it now justifies the continued use of the present interpretation of trauma. Cf. Ballard County v. Kentucky County Debt Commission, 290 Ky. 770, 162 S.W.2d 771 (1942), and 20 Am.Jur.2d, Courts § 184.

The judgment is affirmed.

WILLIAMS, C. J., and MILLIKEN, PALMORE and STEINFELD, JJ., concur.

OSBORNE and MONTGOMERY, JJ., dissent.

STEINFELD, Judge (concurring).

I concur in the decision only because of the law announced in Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 (1961) and

Terry v. Associated Stone, Ky., 334 S.W.2d 926 (1960), but for which I would hold that there is not even an inference from which we may assume that a "traumatic personal injury (was) sustained by the employee by accident". KRS 342.005. The proof is not convincing that any event had occurred to or involved Holsclaw other than the customary and usual experience of a driver of a truck. Except in the cases of occupational diseases covered by the Workmen's Compensation Act, I would hold that the Act is not intended to embrace injury or death unless there is sufficient evidence that it resulted from an unusual occurrence, as contrasted with the normal stresses and strains related to the job and the mundane routine activities connected with the work in which the employee is engaged.

PALMORE, Judge (concurring).

It was explained at some length in Terry v. Associated Stone Company, Ky., 334 S.W.2d 926 (1960), and Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 (1961), that long before the legislature in 1956 added "traumatic" to the words "personal injury" in KRS 342.005 the court had construed the statute in that manner anyway,[1] and yet over a period of more than 30 years between 1926 and 1958 had recognized compensability of the following types of injury: (1) Brain hemorrhage following heavy strain, Coleman Mining Co. v. Wicks, 213 Ky. 134, 280 S.W. 936 (1926); (2) Tularaemia from handling rabbits, Great Atlantic & Pacific Tea Co. v. Sexton, 242 Ky. 266, 46 S.W.2d 87 (1932); (3) Heat stroke from "artificial" heat, Wolfe v. American Rolling Mill Co., 277 Ky. 395, 126 S.W.2d 835 (1939); (4) Muscular strain from lifting heavy stone, resulting in pleurisy and subsequent pneumonia, Tafel Electric Co. v. Scherle, 295 Ky. 99, 173 S.W.2d 810 (1943); (5) Back strain from pushing heavy cart, aggravating a pre-existing but unknown arthritic condition, Wood-Mosaic Co. v. Shumate, 305 Ky. 368, 204 S.W.2d 331 (1947);

(6) Sudden appearance of inguinal hernia during heavy work, Harlan-Wallins Coal Corp. v. Lawson, Ky., 242 S.W.2d 999 (1951); (7) Sudden aggravation of stomach and intestinal ulcers while lifting heavy timbers, resulting in internal hemorrhages, Totz Coal Co. v. Creech, Ky., 245 S.W.2d 924 (1951); (8) Herniated disc resulting from strain, United States Coal & Coke Co. v. Parsons, Ky., 245 S.W.2d 442 (1951); (9) Herniated disc developing from heavy work, Ironton Fire Brick Co. v. Madden, Ky., 285 S.W.2d 897 (1956); (10) Back strain from lifting heavy pump, aggravating a pre-existing spine condition, Parrott v. S. A. Healy Co., Ky., 290 S.W.2d 798 (1956); (11) Back strain from lifting 40-lb box, aggravating a congenital defect of the spine, Contractors Service & Supply Co. v. Chism, Ky., 316 S.W.2d 840 (1958).

So, whether or not the legislative amendment of 1956 was intended to overrule Adams v. Bryant, Ky., 274 S.W.2d 791 (1955), the court found it difficult to believe it was intended also to deny compensation in all of these many types of cases in which the physical effort of a man's work precipitates an internal breakdown resulting in disablement. It seemed more reasonable to believe that the legislators would not intentionally have departed from the fundamental purpose of workmen's compensation, which is to compensate the employe for *disability caused by his work*. And that is what a unanimous court decided in Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 (1961).

That the court in times past had seen fit to define "traumatic" eight times proves only what was observed in *Grimes*, that it is indeed a slippery word. Presumably the dictionary remains open to the court of today as it did to the court of yesterday.

The majority opinion does not represent a hit-or-miss approach. It follows a consistent line of cases holding that if there is substantial medical proof that the physi-

1. Cf. Rusch v. Louisville Water Co., 193 Ky. 698, 237 S.W. 389 (1922).

cal effort demanded by a man's work was a *probable* factor in precipitating a disability, though a pre-existing disease may be the predominant cause, and the board so finds,[2] or under the weight of the evidence has no reasonable basis for finding otherwise,[3] he is entitled to compensation apportioned on the basis of the contribution of the work to the resulting disability.[4]

OSBORNE, Judge (dissenting).

The majority opinion herein is a classical example of the position that a court can reach when it refuses to follow any pre-determined rule of law. We have reasoned from case to case in this field with disregard for the statutes and legal principles which should be controlling until now we find ourselves awarding compensation for the death of an employee because per chance he just happened to have a cerebral hemorrhage while on the job. To me the majority opinion gives the impression of being a studied effort in avoiding a serious legal discussion of the rule of law governing this type of case. I believe the time has come to stop and ascertain where we are. The majority should do this and not continue the practice of picking and choosing in these cases according to whim. Hard legal principles should be faced up to by courts, not avoided or evaded.

Charles William Holsclaw was a truck driver. Driving was his regular employment and had been for some time. On the date of his death, he was sitting at the wheel of his parked truck in Santa Rosa, New Mexico, waiting for a traffic check by the New Mexico highway patrol, when suddenly he slumped forward upon the steering wheel and died of a cerebral hemorrhage. The hemorrhage, according to medical testimony, was brought about by a chronic condition of hypertension and arteriosclerosis. In the two days just prior to his death he had driven 1200 miles, which averages 600 miles per day. This by no stretch of the imagination constitutes exertion or any type of heavy or unusual work for a truck driver. His widow instituted these proceedings to recover death benefits under KRS 342.005 et seq., the Workmn's Compensation statutes. In defining the scope of the Act, KRS 342.005 provides the Act shall apply when the employee suffers "a traumatic personal injury sustained * * * by accident".

It will be noted that the Act sets two requirements which must be met before the injury or death is compensable. 1. There must be a "traumatic personal injury" and 2. The injury must have been "sustained by the employee by accident". The requirement that the injury must arise from trauma has had an interesting history in this state. As the Act was originally written it did not specifically require that an injury by accident be traumatic but did require that a disease in order to be covered by the Act be the "natural and direct result of traumatic injury by accident." [1]

2. Terry v. Associated Stone Company, Ky., 334 S.W.2d 926 (1960).

3. Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 (1961); Johnson v. Stone, Ky., 357 S.W.2d 844 (1962); Young v. Eastern Coal Corp., Ky., 408 S.W.2d 464 (1966).

4. Conversely, if the strongest finding supported by the proof would be that the work was a *possible* factor, compensation has been denied. Kelly Contracting Co. v. Robinson, Ky., 377 S.W.2d 892 (1964); Dupriest v. Tecon Corp., Ky., 396 S.W.2d 778 (1965); Hutchinson v.

Skilton Construction Co., Ky., 417 S.W. 2d 142 (1967).

1. The original Act read: "It shall affect the liability of the employers subject thereto to their employes for a personal injury sustained by the employe by accident arising out of and in the course of his employment, or for death resulting from such accidental injury. Personal injury by accident shall not include diseases except where the disease is the natural and direct result of a traumatic injury by accident, nor shall the injury include the results of a preexisting disease * * * "

This court in a line of cases and in accord with the highest court in most of the other states construed the Act to require a "traumatic" injury by accident. See Rusch v. Louisville Water Company, 193 Ky. 698, 237 S.W. 389 (1922). Here a valve in a steam boiler blew out. Allen Rusch, an employee of the company, in attempting to repair the blow-out became overexcited and overexerted. He fell dead. The Compensation Board found:

"1. The death of decedent was not the result of traumatic injury by accident, but was due to preexisting disease of the heart.

"2. Overexcitement and hurry at a critical moment, taken in connection with a diseased heart, caused the heart to fail."

In affirming the Board, the court said:

"In this case the board found that the death of Rusch was not the result of traumatic injury by accident, but was due to pre-existing disease of the heart, and, further, that excitement and hurry at a critical moment, taken in connection with a diseased heart, caused the heart to fail. There is no question of the accuracy of these findings, nor is there any contrariety in the evidence by which they are shown to exist. The single inquiry then is as to their legal effect. * * * The finding was that the death was not the result of traumatic injury by accident, but was due to a pre-existing disease of the heart. The liability created by the statute for injury or death resulting from accident, arising out of and in the course of employment, is explicitly defined as excluding disease. * * *"

This language was reaffirmed and quoted in Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S.W. 234 (1925). Here the employee was helping shoe a recalcitrant mule. A rope was tied to the foot of a mule and held by the employee. He became quite warm, overexerted, nauseated and weak. He died that evening of a heart attack. The Board made an award to the widow which the circuit court affirmed. This court reversed, citing the Rusch case, supra, and stated:

"It is exceedingly doubtful if what happened to the employee, Williams, in this case could be classified as an accident, it being our opinion that it could not; but, without determining that question (it not being necessary), it was certainly not a traumatic accident so as to permit the apportioning of the compensation and allowing an award for whatever was produced by it."

The law followed pretty much along these lines until 1955 in the case of Adams v. Bryant, Ky., 274 S.W.2d 791, where a mine employee became overexerted in an attempt to rescue fellow workmen who were trapped in a cave-in. Death was due to cardiac failure brought on by overexertion. This court overruled and distinguished all previous cases holding under the terms of the Act that "trauma" was unnecessary. In commenting on the Wallins Creek case, the court said:

"The language as to whether the accident was to any extent of a traumatic nature, by the Court's own admission, is nothing more than loose dictum and cannot be binding upon us here. Other expressions by the Court seem far more helpful. We have generally defined the word 'accident' as something 'unusual, unexpected, and undesigned * * * traceable to a definite time, place, and cause.' Great Atlantic & Pacific Tea Co. v. Sexton, 242 Ky. 266, 46 S.W.2d 87, 88. And we find our use of the word is in full accord with its generally accepted meaning in almost every other jurisdiction. See 4 Schneider, supra, pages 377 et seq.; Horovitz, supra, pages 84 et seq.; 58 Am.Jur., supra, section 96, page 705."

This opinion was handed down in 1955. The legislature in 1956 as a direct result of this opinion amended the Act to its

present form requiring all personal injuries to be "traumatic" in order to be compensable.[2]

The first case to come before this court wherein the new Act applied was Grimes v. Goodlett and Adams, Ky., 345 S.W.2d 47 (1961). This was a cardiac stoppage case with no unusual stress. The term "traumatic" was read out of the statutes as being a "slippery word."

> "The simplest definitions of 'trauma' and 'traumatic' given in Webster's International Dictionary (1955) are, respectively, 'an injury or wound, or the resulting condition,' and 'caused by a wound, injury or shock.' What is an injury? The same authority defines it as 'damage or hurt done to or suffered by a person or thing,' and says that 'hurt' is 'injury; damage; detriment; harm; mischief.' It would seem, therefore, merely on the strength of these common definitions, that once a condition is accepted as a personal 'injury' it is necessarily accepted as traumatic. * * *"

> "The parties seem to agree that the purpose of the 1956 amendment in adding the word 'traumatic' was to nullify the effect of the Adams case. But in view of the meaning of that slippery word as exemplified by the exertion and strain cases decided prior to the Adams case we are unable to say just what was the legislative intent of the 1956 amendment."

This case is a classical example of reasoning from the ridiculous to the sublime. At the time the court went to the dictionary to define "traumatic" it had been defined no less than eight times in previous decisions.[3]

In fact the court had made a previous journey to the dictionary for a definition of "traumatic" and defined it in the following terms:

> "Obviously the construction of this phrase turns on the definition of the word 'traumatic.' The word 'trauma' is defined in Black's Legal Dictionary as a 'wound; any injury to the body caused by external violence.' And 'traumatic' is defined as 'caused by or resulting from a wound or any external injury.' In Webster's New International Dictionary, the word 'trauma' is defined as 'a wound or injury;' 'traumatic' as 'pertaining to or due to wound or injury.' The Century Dictionary defines 'traumatic' to be 'an abnormal condition of the human body produced by external violence as distinguished from that produced by poisons, symotic infections, bad habits and other less evident causes.' Webster's Unabridged Dictionary defines 'traumatism' as 'a wound or injury directly produced by causes external to the body; also violence producing a wound or injury, as rupture of the stomach by traumatism." Jellico Coal Co. v. Adkins, supra.

2. The Act was amended to read: "It shall affect the liability of the employers subject thereto to their employes for a traumatic personal injury sustained by the employe by accident, and for disability resulting from occupational diseases as defined in this chapter, arising out of and in the course of his employment, or for death resulting from such accidental injury or occupational disease; provided, however, that 'traumatic personal injury by accident' as herein defined shall not include diseases except where the disease is the natural and direct result of a traumatic injury * * *."

3. These cases are: Rusch v. Louisville Water Co., 193 Ky. 698, 237 S.W. 389 (1922); Jellico Coal Co. v. Adkins, 197 Ky. 684, 247 S.W. 972 (1923); Wallins Creek Collieries Co. v. Williams, 211 Ky. 200, 277 S.W. 234 (1925); Straight Creek Fuel Co. v. Hunt, 221 Ky. 265, 298 S.W. 686 (1927); Mills v. Columbia Gas Const. Co., 246 Ky. 464, 55 S.W.2d 394 (1932); Great Atlantic & Pacific Tea Co. v. Sexton, 242 Ky. 266, 46 S.W.2d 87 (1932); T. M. Crutcher Dental Depot v. Miller, 251 Ky. 201, 64 S.W.2d 466 (1933); and Harlan Creek Collieries Co. v. Johnson, 308 Ky. 89, 212 S.W.2d 540 (1948).

Trauma needed no definition. It was probably the best defined word in American jurisprudence. It meant simply and plainly a personal injury resulting from an external force. It still means the same thing. There has been no change in the definition. There has only been a wilful and capricious judicial determination to defy the legislature and not to apply the plain and simple requirements of a statute. The right to decide cases not in accord with the law but on the basis of personal desire is a great temptation to all judges. It is the exercise of absolute power. A privilege that no man should ever have, but which seems to be increasingly encountered in today's judicial opinions both from our federal and state courts.

We now come to the second requirement of the Act, viz., the injury must be "sustained by the employe by accident." This court has defined accident as being "something unusual, unexpected and undesigned." [4]

It is clear from these cases that there is not an accident unless there is an unexpected cause as distinguished from an unexpected result. There is no reason to make a futile and lengthy search within the facts of this case for an "accident." It is crystal clear that there was none. Nothing unusual happened. There is no unusual activity, exertion or strain. The decedent fell as the result of a disease that had no relationship to his employment. The facts of the case speak far more eloquently to this point than anything this feeble person might write. This court has authority under the constitution to interpret acts of the legislature. Here we have perverted this authority into the right to abrogate a part of an act which is admittedly valid in all respects. A more glaring example of the abuse of judicial

power can be found nowhere in the law of the state.

For the foregoing reasons, I respectfully dissent.

MONTGOMERY, J., joins in this dissent.

---

4. See Phil Hollenbach Co. v. Hollenbach, 181 Ky. 262, 204 S.W. 152, 13 A.L.R. 524; Totz Coal Co. v. Creech, Ky., 245 S.W.2d 924; Hillrich & Bradsby Co. v. Parker, Ky., 267 S.W.2d 746; Rusch v. Louisville Water Co., supra; and Kentucky Stone Co. v. Phillips, 294 Ky. 576, 172 S.W.2d 216.