Thelma L. STOVALL, Commissioner of Labor, Successor to John Calhoun Wells, Commissioner of Labor and Custodian of Special Fund, Movant,

v.

DAL–CAMP, INC.; the Travelers Insurance Co.; Julia A. Marshall, Legal and Natural Guardian for Joseph Leo Landing, III; Rainee Dawn and John Austin; and Workers' Compensation Board of Kentucky, Respondents.

MODERN ELECTRIC AND FURNITURE COMPANY, Movant,

v.

Thelma L. STOVALL, Successor to John Calhoun Wells, Commissioner of Labor and Custodian of the Special Fund; Allie Collins; and Workers' Compensation Board, Respondents.

GIBSON LUMBER CO., Appellant,

v.

Wilbur Jones GIBSON, Special Fund and Workers' Compensation Board, Appellees.

Supreme Court of Kentucky.

April 19, 1984.

Rehearing Denied in No. 83–SC–389–DG June 14, 1984.

Cyril E. Shadowen, Douglas A. U'Sellis, Dept. of Labor, Louisville, for Thelma Stovall in No. 83–SC–298–DG.

Gayle G. Huff, Harlan, for Dal-Camp and Travelers Insurance.

William R. Forester, Harlan, for Julia A. Marshall.

J. Scott Getsinger, Frankfort, for Workers' Compensation Board.

William A. Rice, Rice, Huff & Hendrickson, Harlan, for Modern Electric and Furniture Co.

Michael A. Owsley, Keith M. Carwell, English, Lucas, Priest & Owsley, Bowling Green, for Gibson Lumber Co.

J. Marshall Hughes, White, Hughes & Meredith, Bowling Green, John E. Stephenson, Dept. of Labor, Louisville, for appellees.

Denis S. Kline, Dept. of Labor, Louisville, for Thelma Stovall in No. 83–SC–389–DG.

William R. Forester, Forester, Forester, Buttermore & Turner, P.S.C., Harlan, for Allie Collins.

VANCE, Justice.

This court has granted discretionary review in two of the captioned cases and has granted a transfer from the Court of Appeals to this court in the other to review the question of apportionment of a compensation award between the employer and the Special Fund in situations in which exertion or stress on the job has aroused a dormant, nondisabling disease or condition into disabling reality but in which there would have been no disability at all except for the arousal of the nondisabling disease or condition.

Payment of compensation for the disabilities arising from the combined effects of previous and subsequent injuries was provided by Section 4901, Kentucky Statutes, Sixth Edition, 1922. The liability of the employer in whose employment the subsequent injury was sustained was limited to the payment of compensation to which such resulting condition entitled the employee, less all compensation which the provisions of the Compensation Act would have afforded on account of the prior injury or

injuries had they been compensated for thereunder.

■ The purpose of this and subsequent statutory enactments relating to compensation for disability resulting from the combined effects of previous and subsequent injuries was to protect employers from having to pay for injuries not sustained in their employ, to prevent an employer from being held responsible for more of a compensation award than is attributable to a disability incurred in the course of an employee's employment with him, and to encourage re-employment of injured workers by relieving the employer of the risk of paying compensation for disability brought about as a result of a previous condition. *Bennett v. White Coal Co.*, 288 Ky. 827, 157 S.W.2d 73 (1941); *Kentucky Mountain Coal Company v. Witt*, Ky., 358 S.W.2d 517 (1962); *Transport Motor Exp., Inc. v. Finn*, Ky., 574 S.W.2d 277 (1978).

Succeeding statutory amendments in 1946, 1948, 1950, 1956, 1960, 1962, 1964, 1972, 1978, 1980, and 1982 have expanded the scope of compensation for subsequent injuries by providing compensation for arousal of nondisabling dormant disease or conditions into disabling reality, and providing for the Special Fund to provide compensation for disability in excess of that which would have resulted from the subsequent injury alone. K.R.S. 342.120.

Beginning in 1946 and continuing through all the amendments to date, K.R.S. 342.120 is triggered when an employee sustains *a subsequent compensable injury by accident.* Consistently, through all of the amendments, when a subsequent compensable injury has aroused a nondisabling, dormant disease or condition into disabling reality, the liability of the employer has been limited to compensation for disability which would have resulted from the subsequent injury alone had there been no pre-existing disability or dormant but aroused disease or condition.

The statutory standard is readily applicable in cases in which there occurs an identifiable, subsequent injury which is in itself a compensable injury and which alone would cause some disability even if there had been no previous disability or dormant disease or condition capable of being aroused into disabling reality.

Death or disability caused by myocardial infarction does not fit readily into the statutory standard. This court decided in *Terry v. Associated Stone Co.*, Ky., 334 S.W.2d 926 (1960) that disability resulting from atherosclerotic disease aroused into disability by work-connected stress or exertion was a compensable injury and that the liability for compensation should have been prorated.

Following an amendment to K.R.S. 342.-005(1) in 1956 which added the word "traumatic" to the personal injury by accident requirement, this court held in *Grimes v. Goodlett and Adams*, Ky., 345 S.W.2d 47 (1961), that a heart attack caused by work-connected exertion or stress which aroused an underlying atherosclerotic condition was a compensable traumatic personal injury by accident. See also, *Trailer Convoys, Inc. v. Holsclaw*, Ky., 419 S.W.2d 563 (1967).

Apportionment of liability between the Special Fund and the employer was mandated in *Moore v. Square D Company*, Ky., 518 S.W.2d 781 (1974); *Young v. Davidson, Inc.*, Ky., 463 S.W.2d 924 (1971); and *Yocom v. Loy*, Ky., 573 S.W.2d 645 (1978). *Yocom v. Loy* notes that part of the disability in a heart attack case may not be compensable if there existed any prior occupational disability as a result of functional disability from the pre-existing atherosclerotic disease or condition.

No case cited to us has considered a 100% apportionment of liability to the Special Fund in heart attack cases, and none of them has come to grips with the language of the statute which limits the liability of the employer to the payment of compensation for only the degree of disability which would have resulted from the subsequent injury had there been no pre-existing disability or dormant, but aroused, disease or condition. This issue necessitates a consideration of precisely what is the subsequent injury in heart attack cases.

In the captioned case, *Stovall, Commissioner v. Dal-Camp, Inc., et al.* the medical testimony was to the effect that work-connected exertion aroused a non-disabling atherosclerotic condition but that the exertion itself would not have caused any disability whatever had it not been for the underlying disease.

K.R.S. 342.120(3), in effect at the time of the heart attack, provided:

"If it is found that the employee is a person mentioned in paragraphs (a) or (b) of subsection (1) and a *subsequent compensable injury* or occupational disease has resulted in *additional permanent disability* so that the *degree of disability caused by the combined disabilities is greater than that which would have resulted from the subsequent injury or occupational disease alone,* and the employee is entitled to receive *compensation on the basis of the combined disabilities,* the employer shall be liable only for the degree of disability which would have resulted from the latter injury or occupational disease had there been no pre-existing disability or dormant, but aroused disease or condition."

The Special Fund contends that under the statute it is liable for only the additional disability which was caused by the arousal of a dormant condition by a subsequent compensable injury.

The difficulty in applying the apportionment provisions of the statute in heart attack cases springs from the ambiguity as to what is the subsequent injury which has aroused a nondisabling condition into disabling reality. The statute contemplates a separate subsequent injury which is in itself compensable and which has caused additional disability by the arousal of a dormant condition.

■ If there is a case in which work-connected exertion or stress causes a heart attack independent of the arousal of underlying arteriosclerosis as a contributing factor, the award must be assessed entirely against the employer because in such a case none of the disability could be attributed to arousal of a pre-existing condition.

If a myocardial infarction is considered to be the subsequent injury in these cases, we must then ask ourselves what pre-existing nondisabling condition does a myocardial infarction arouse into disabling reality? The uncontradicted medical evidence in the captioned cases is that myocardial infarction does not arouse a nondisabling pre-existing condition into disabling reality; instead the myocardial infarction is the result of the arousal of a pre-existing nondisabling condition by some subsequent event, i.e., work-connected exertion or stress.

In these cases it appears that the subsequent event which aroused the pre-existing, nondisabling artherosclerotic condition into disabling reality was the strain placed upon the cardiovascular system by work-connected exertion or stress. There is no medical evidence, however, to the effect that work-connected exertion or stress causes any separate, identifiable injury to the cardiovascular system which injury in turn arouses the pre-existing condition into disabling reality. Instead, the work-connected exertion or stress appears to be the arousing factor.

It is argued that strain, stress, or exertion are not injuries in themselves, at least not compensable injuries; nevertheless past decisions of this court have long held that when work-connected exertion or stress arouse a pre-existing nondisabling atherosclerotic condition and cause a heart attack, the disability arising therefrom is compensable. *Grimes v. Goodlett and Adams, supra.* This rule has now become firmly entrenched, insurance rates have been adjusted to it, and labor and management have come to rely upon it. *Trailer Convoys, Inc. v. Holsclaw, supra.*

■ Proceeding from the bench mark that disability resulting from a heart attack caused by a work-connected arousal of an underlying atherosclerotic condition is compensable, the question is in what manner, if any, the award should be apportioned.

In many cases the medical testimony will indicate that the work-connected exertion or stress would not have produced any

disability at all had it not been for the arousal of the underlying condition. Conversely, the underlying condition would not have produced any disability at that time had it not been for the work-connected exertion or stress. In substance, each of the factors acting together will often produce a result that would not be produced by either of the factors acting alone.

In logic it would appear that liability for the resulting disability should be apportioned in the ratio that the work-connected exertion or stress and the underlying disease each contributed to bring about the heart attack.

Apportionment, however, is not dictated by logic but by statute, and the statute plainly directs that "the employer shall be liable only for the degree of disability which would have resulted from the latter injury or occupational disease had there been no pre-existing disability or dormant, but aroused disease or condition."

No matter how much the strain or exertion at work may have contributed to cause the heart attack, it is clear from the medical evidence in many cases that the work-connected strain or exertion in itself would not have caused any disability whatsoever if it had not been for the arousal of a non-disabling condition or disease. That being true, it is improper, in those cases, to apportion any of the liability for compensation upon the employer.

This decision is in keeping with the purposes of the Compensation Act stated earlier in this opinion. Employers would understandably be reluctant to offer employment to any person with a history of hypertension or cardiovascular problems if, by doing so, the employer would incur the risk of liability for disability which would never have been caused by the employment but which might result from previously existing conditions aroused by the stress or exertion of the work.

Heart attack cases have presented myriad problems in the interpretation of the workers' compensation statute. As we noted in *Moore v. Square D Company, supra*,

special rules have been applied to these cases. The Workers' Compensation Act has been so frequently amended as to resemble a patchwork quilt, yet there has been no specific address by the Act to the peculiar problems related to heart attack cases and subsequent injury awards and allocation.

We are past the point of no return in our interpretation of the Act that the disability resulting from a heart attack induced from the arousal of a non-disabling condition by work-related stress or exertion is compensable. Compensability in such cases necessarily rests upon the arousal of a nondisabling condition by a subsequent compensable injury. Unless it can be shown that work-connected exertion or stress causes some identifiable injury to the body which then arouses a pre-existing nondisabling condition into disabling reality by causing a heart attack, it must necessarily follow that the past decisions of this court have held, by inference at least, that work-connected stress or strain, in itself, constitutes a subsequent injury.

The dilemma with which we are now faced classically illustrates the difficulties which may arise from a so-called liberal construction of the statutes as opposed to strict construction.

During the time when the line of heart attack cases was being developed, K.R.S. 342.004 provided:

"This Chapter shall be liberally construed on questions of law, as distinguished from evidence ..."

K.R.S. 342.004 was repealed in 1980, but the line of heart attack cases was developed while the statute was effective and no doubt influenced the court in its interpretation of the Act.

The decision today will have a tendency to shift much, or all, of the liability for compensation in heart attack cases to the Special Fund. If this decision or the previous decisions holding that heart attacks are compensable injuries if caused by work-connected arousal of an underlying atherosclerotic condition do not truly reflect the intent of the General Assembly in enacting

the statutes involved, the General Assembly is empowered to enact legislation to specifically address the matter and to make its intent clear.

■ In No. 83–SC–298–DG the medical testimony established that the heart attack was brought about by arousal of a pre-existing, nondisabling condition by exertion or strain at work. There was no evidence that the work-connected exertion would have produced any disability whatever, absent the underlying condition, and there was uncontradicted medical evidence that the work-connected exertion, by itself, would not have produced any disability. The Compensation Board awarded 100% disability, apportioned 25% to the employer and 75% to the Special Fund. The circuit court reversed and held that the entire award should be allocated against the Special Fund. The Court of Appeals affirmed, and we affirm the decision of the Court of Appeals.

In No. 83–SC–389–DG the evidence was uncontradicted that the work-related exertion would have produced no disability had it not been for an underlying nondisabling condition. The Compensation Board awarded 100% disability, apportioned 25% to the employer and 75% to the Special Fund. The circuit court reversed and directed that the award be allocated entirely to the Special Fund. The Court of Appeals reversed and reinstated the award as allocated by the Compensation Board. We reverse the Court of Appeals and affirm the Judgment of the circuit court.

■ In No. 83–SC–554–TRG the Compensation Board found as a fact that claimant had sustained a total disability as the result of a heart attack. It dismissed the Special Fund and imposed all liability on the employer. The circuit court affirmed, and we granted transfer of the appeal directly to this court.

There is no evidence in the record that the work-connected exertion, by itself, absent an underlying, nondisabling atherosclerotic condition would or could have caused the heart attack or any disability.

There was no contradiction in the evidence that claimant did suffer from such an atherosclerotic condition. One doctor testified that no disability whatever would have been caused by the exertion at work. Another doctor, in his report, attributed none of the disability to a previously existing condition.

The finding of the Board that the disability is work-related is inconsistent with the dismissal of the Special Fund unless the evidence would sustain a finding that the heart attack was caused entirely by the work-connected exertion and was not contributed to in any degree by a pre-existing nondisabling disease or condition. The evidence does not permit such a finding.

The Judgment is vacated, and the trial court is directed to remand this case to the Workers' Compensation Board for reconsideration and determination consistent with this opinion.

STEPHENS, C.J., and VANCE, GANT, AKER, WINTERSHEIMER and STEPHENSON, JJ., concur.

LEIBSON, J., dissents by separate opinion.

LEIBSON, Justice, dissenting.

Respectfully, I dissent. The majority opinion concedes:

"In logic it would appear that liability for the resulting disability should be apportioned in the ratio that the work-connected exertion or stress and the underlying disease each contributed to bring about the heart attack."

The majority then concludes that "Apportionment, however, is not dictated by logic but by statute, and the statute plainly directs" a contrary result. But the words of the statute are not so plain in their meaning. If they were we would not be considering three appeals with different results on the same facts.

The majority discards logic in favor of what it perceives to be "the purposes of the Compensation Act." These are not "purposes" stated in the Act, but "purposes" as the majority perceives them. These "pur-

poses" are perceived as protecting employers from financial responsibility for heart attacks caused by a combination of work-connected exertion or stress and an underlying disease by shifting the entire expense, 100%, to the special fund. Hopefully, this will encourage employment of persons "with a history of hypertension or cardiovascular problems."

I seriously doubt that we will see any rush to employ persons with such a history for work involving the kind of stress or exertion that might lead to heart attacks. It is more realistic to assume that in most of these heart attack cases the individual was employed because the underlying atherosclerotic condition was unknown. The result of our decision will be to protect employers from financial responsibility, with no corresponding increase in employment of persons with known significant atherosclerotic conditions.

The internal logic of the statutory scheme, rather than any unspecified legislative purpose, should direct us in deciding the meaning of the statute. KRS 342.120 created the special fund to pay a *portion* of the award where the employee has an occupational disability resulting from a combination of a pre-existing "dormant nondisabling disease or condition" and "a subsequent compensable injury by accident or an occupational disease." KRS 342.-120(1)(b).

Subsection (3) directs apportionment of "the combined disabilities." Subsection (4) directs that the public, through the special fund, pay "the remaining compensation ... for disability resulting from a dormant disease or condition aroused into disabling reality ...." "Remaining compensation" implies that the employer has some initial liability for the traumatic event.

The statutory language of these sections cannot logically be considered as expressing a 100% obligation on the special fund in such situations.

A heart attack or a stroke is a traumatic event producing physical injury. Early on, the threshold debate was not whether the employer had suffered physical injury caus-

ing occupational disability from a heart attack on the job, but whether as a medical fact the stress and exertion on the job contributed to cause the heart attack. Now the medical evidence in such cases, almost uniformly, is that stress or exertion from the job is a precipitating factor but for which the heart attack would not have occurred. Logic compels that we include such a precipitating factor within the parameters of a "subsequent compensable injury," and that we apportion financial responsibility for the occupational disability that results from the combination of an underlying, dormant and nondisabling atherosclerotic condition and the stress or exertion from the job on the basis of causation.

In *Stovall v. Dal-Camp, Inc.*, the medical evidence was that work related stress was "a precipitating cause of the myocardial infarction," caused "75%" by "preexisting atherosclerotic heart disease and 25% due to the stressful work incident." The Board apportioned its award on the basis of this medical evidence. It was a logical decision consonant with the language of the statute. The Board should be affirmed.

Likewise, in *Modern Electric & Furniture Co. v. Stovall,* and in *Gibson Lumber Co. v. Gibson,* the Board's award was based on competent medical evidence apportioning causation, and should be affirmed.