**VOITH INDUSTRIAL SERVICES, INC., Appellant**

v.

**Astin GRAY; Hon. Stephanie L. Kinney, Administrative Law Judge; and Workers' Compensation Board, Appellees**

**NO. 2016-CA-001083-WC**

Court of Appeals of Kentucky.

MARCH 24, 2017; 10:00 A.M.

BRIEF FOR APPELLANT: David D. Black, Louisville, Kentucky

BRIEF FOR APPELLEE: Christopher P. Evensen, Louisville, Kentucky

BEFORE: COMBS, DIXON, AND NICKELL, JUDGES.

## OPINION

DIXON, JUDGE:

Voith Industrial Services, Inc., seeks review of a decision of the Workers' Compensation Board, which affirmed in part, vacated in part, and remanded an Administrative Law Judge's award of permanent partial disability benefits to Astin Gray. Finding no error, we affirm.

Gray was born in 1966 and has a 9th grade education. He moved to the United States from Jamaica in December 2007. Gray began working as a janitor for Voith in May 2012, and he was assigned to clean the paint shop facility at an automobile manufacturing plant in Louisville. Gray's job duties included cleaning the paint room and railing below the paint robots, as well as mopping and cleaning offices. On April 4 and April 6, 2013, while cleaning the paint room, Gray inhaled chemical fumes from Purge solvent, which was used to clean the paint robots. After inhaling Purge, Gray experienced dizziness, burning in his throat, and chest tightness. Gray sought treatment at Baptistworx and was diagnosed with GERD symptoms and cough possibly related to inhalation injury. Gray returned to work and subsequently sought treatment with his primary care physician, Dr. Miriam Reyes. Pulmonary functional testing indicated moderately severe restriction, and Dr. Reyes referred Gray to Dr. Scott Kellie, a pulmonologist, for further assessment. Dr. Kellie diagnosed asthma and reactive airway dysfunction syndrome (RADS). Dr. Kellie prescribed an inhaler and took Gray off work for two weeks. Gray's symptoms improved while off work, and Dr. Kellie subsequently recommended that Gray return to work but avoid exposure to the paint room chemicals. Gray also underwent a sleep study, which revealed sleep apnea with oxygen deficit. Gray returned to work for Voith and was relocated to the main building in the plant to avoid exposure to Purge solvent in the paint room. In January 2015, Gray filed a claim for workers' compensation benefits, alleging the inhalation of Purge solvent in April 2013, caused Gray's asthma, RADS, and sleep apnea.

At the final hearing, Gray testified he experiences shortness of breath and chest pain if he inhales dust while sweeping. He asserted that he is capable of performing his janitorial duties in the main building, but he believes he could not resume working in the paint room because of the chemical fumes. According to Gray, he never experienced any breathing problems or sleep problems prior to April 2013. Gray submitted the IME report of Dr. Warren Bilkey. Dr. Bilkey reviewed Gray's history of exposure to the Purge solvent. Dr. Bilkey determined Gray developed RADS, asthma, and sleep apnea as a result of inhaling the Purge solvent in April 2013. Dr. Bilkey assessed a whole person impairment of 22%.

Voith submitted the treatment records and deposition of Dr. Douglas Lotz, an allergist and immunologist. Dr. Lotz diagnosed allergic rhinitis and moderate persistent occupational asthma as a result of Gray's exposure to Purge solvent. Dr. Lotz opined Gray was capable of returning to his customary work, but recommended

minimizing any exposure to chemicals. Dr. Lotz assessed a 10% whole person impairment for occupational asthma. Dr. Lotz disagreed with Dr. Bilkey's diagnosis of RADS and contended Gray's sleep apnea was not causally related to the exposure to Purge solvent. Dr. Lotz believed Gray had not yet reached maximum medical improvement.

The ALJ concluded Gray developed occupational asthma, RADS, and sleep apnea as a result of the work injury on April 4, 2013. The ALJ found Gray had no history of breathing problems or sleep apnea prior to his exposure to Purge. The ALJ noted Gray's current work restrictions required him to work in a building where he was not exposed to Purge. The ALJ also found, although Gray had received a pay cut when he transferred to the main building, he was currently earning his pre-injury wage. The ALJ awarded Gray permanent partial disability benefits based on a 13% impairment rating.[1] The ALJ also found Gray was entitled to an enhanced benefit pursuant to the three multiplier in KRS 342.730(1)(c)1 because Gray was unable to perform the essential job duties that he performed pre-injury. Voith filed a petition for reconsideration requesting additional findings to support the application of the statutory three multiplier. The ALJ issued an order on reconsideration setting forth additional findings to support the enhanced award, noting Gray's ongoing pulmonary limitations made it unlikely he could continue earning a wage equal to or greater than his pre-injury wage for the indefinite future. Voith appealed the ALJ's decision to the Board. In its opinion, the Board affirmed the ALJ's findings regarding the application of the three multiplier pursuant to KRS 342.730(1)(c)1. The Board

concluded the ALJ failed to properly analyze the issue of temporary total disability; consequently the Board vacated the opinion as to that issue and remanded the case to the ALJ. This petition for review followed.

The findings of an ALJ in favor of an injured worker will not be disturbed on appeal where the decision is supported by substantial evidence. *Wolf Creek Collieries v. Crum*, 673 S.W.2d 735, 736 (Ky. App. 1984). When this Court reviews a workers' compensation decision, our function is to correct the Board only where we believe "the Board has overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hospital v. Kelly*, 827 S.W.2d 685, 687–88 (Ky. 1992).

KRS 342.730(1)(c)1 provides that an injured worker may receive three times the amount of his calculated permanent partial disability benefit if he "does not retain the physical capacity to return to the type of work ... performed at the time of injury[.]" In contrast, a worker who returns to employment earning an equal or greater weekly wage than his pre-injury weekly wage is entitled to a double income benefit for any time period his employment ceases at that wage level. KRS 342.730(1)(c)2. In *Fawbush v. Gwinn*, 103 S.W.3d 5 (Ky. 2003), the Kentucky Supreme Court addressed the application of KRS 342.730(1)(c)1 and (c)2. The Court concluded that, in circumstances where both subsections apply, the ALJ has the authority to choose which benefit is most appropriate under the facts of the case. *Id.* at 12. Specifically, the Court noted, "[i]f the evidence indicates that a worker is unlikely to be able to continue earning a wage that

---

1. The ALJ specifically relied on Dr. Lotz's assessment of 10% impairment for occupational asthma, and Dr. Bilkey's assessment of 3% impairment for sleep disturbance related to sleep apnea.

equals or exceeds the wage at the time of injury for the indefinite future, the application of paragraph (c)1 is appropriate." *Id.*

Voith contends the Board erred by affirming the ALJ's application of the three multiplier. Specifically, Voith asserts Gray returned to his pre-injury work and retained the capacity to earn his pre-injury wage for the indefinite future.

■ Voith's arguments attack the sufficiency of the evidence relied upon by the ALJ. It is well settled the ALJ, "as the finder of fact, and not the reviewing court, has the authority to determine the quality, character and substance of the evidence[.]" *Paramount Foods, Inc. v. Burkhardt*, 695 S.W.2d 418, 419 (Ky. 1985). Likewise, the ALJ is free "to believe part of the evidence and disbelieve other parts of the evidence whether it came from the same witness or the same adversary party's total proof." *Caudill v. Maloney's Discount Stores*, 560 S.W.2d 15, 16 (Ky. 1977).

Voith first contends there was no evidence to support a finding Gray could not return to the type of work he performed at the time of the injury, since he returned to his position as a janitor.

■ "When used in the context of an award that is based upon an objectively determined functional impairment, 'the type of work that the employee performed at the time of injury' was most likely intended by the legislature to refer to the actual jobs that the individual performed." *Ford Motor Co. v. Forman*, 142 S.W.3d 141, 145 (Ky. 2004). The ALJ found Gray's pre-injury job required him to work in the paint area in the presence of Purge solvent. Although Gray was able perform janitorial tasks after his injury, he was no longer able to tolerate the presence of Purge solvent as he had pre-injury. The ALJ also noted the medical reports of Dr. Kellie and Dr. Bilkey, which concluded

Gray should not be exposed to Purge solvent.

Although Voith criticizes the evidence relied on by the ALJ, we conclude the ALJ's decision was supported by substantial evidence. The ALJ was free to determine the weight and credibility of the evidence. *Caudill*, 560 S.W.2d at 16. After reviewing the record, we find no error on this issue.

Next, Voith contends there was insufficient evidence for the ALJ to conclude Gray was "unlikely to be able to continue earning a wage that equals or exceeds the wage at the time of injury for the indefinite future[.]" *Fawbush*, 103 S.W.3d at 12. Voith points out Gray's supervisor testified that the company had no complaints about Gray's job performance in the main building and that the job was likely to continue.

■ We are mindful that, "in determining whether a claimant can continue to earn an equal or greater wage, the ALJ must consider a broad range of factors, only one of which is the ability to perform the current job." *Adkins v. Pike County Bd. of Educ.*, 141 S.W.3d 387, 390 (Ky. App. 2004). "The standard for the decision is whether the injury has permanently altered the worker's ability to earn an income." *Adams v. NHC Healthcare*, 199 S.W.3d 163, 168 (Ky. 2006).

In its opinion, the Board summarized the evidence relied upon by the ALJ as follows:

Gray's work as a janitor requires daily exposure to various chemicals and cleaning agents which compromise his pulmonary functioning. The routine task of sweeping causes Gray to experience bouts of wheezing and his breathing deficits force him to take frequent breaks at work. The difficulty with performing a basic janitorial task such as sweeping clearly impacts Gray occupationally. The

continued pulmonary symptoms and limitations identified by the ALJ provide a reasonable basis for the ALJ to conclude Gray is unlikely to continue to earn a wage equal to or greater than the pre-injury earnings for the indefinite future.

■ Although Voith points out the supervisor's testimony as evidence supporting its position, we are mindful "that only an ALJ may judge the weight and credibility of conflicting evidence." *George Humfleet Mobile Homes v. Christman*, 125 S.W.3d 288, 294 (Ky. 2004). The ALJ weighed the medical and lay evidence, including Gray's own testimony regarding his ability to work. The ALJ was persuaded by Gray's testimony as to his pulmonary limitations, specifically noting he needed his regular inhaler, as well as a rescue inhaler, to control his symptoms during the workday. After reviewing the record, we conclude the ALJ's determination Gray was unlikely to earn the same or greater wage indefinitely was supported by substantial evidence; accordingly, the Board properly affirmed the ALJ's decision on this issue.

■ Finally, Voith contends there was no evidence to support the ALJ's finding of work-related sleep apnea. Voith relies on the opinion of Dr. Lotz, who posited several possible non-work-related causes for sleep apnea including weight, diet, and certain medications.

The Board addressed this issue in its opinion, stating:

Gray's testimony and the opinions of Dr. Bilkey constitute substantial evidence supporting the ALJ's determination his sleep apnea is causally related to his exposure while working for Voith. Dr. Bilkey noted Gray had no history of sleep disturbance prior to the work incident. He unequivocally stated he found the diagnosis resulted from the work injury. Medical experts are permitted to draw conclusions as to causation based upon the relationship of symptoms to the environment or the elimination of other possible factors when determining causation. Dr. Lotz did not determine the cause of the condition. Rather, he merely identified other possible causes of sleep apnea in the general population.

Although conflicting evidence was presented, we reiterate that weighing the evidence was a role assigned to the ALJ as fact-finder. *Id.* The ALJ weighed the conflicting evidence on the issue of causation and found Dr. Bilkey's medical opinion coupled with Gray's testimony to be the most credible. After reviewing the record, we conclude the ALJ's determination was supported by substantial evidence.

For the reasons stated herein, the opinion of the Workers' Compensation Board is affirmed.

ALL CONCUR.