RENDERED:  OCTOBER 15, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0275-WC

RUAN TRANSPORTATION                                    APPELLANT


PETITION FOR REVIEW OF A DECISION
v.            OF THE WORKERS' COMPENSATION BOARD
ACTION NO. WC-18-67710


DAVID GRIER; HONORABLE
STEPHANIE L. KINNEY,
ADMINISTRATIVE LAW JUDGE;
AND WORKERS' COMPENSATION
BOARD                                                  APPELLEES


OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, DIXON, AND L. THOMPSON, JUDGES.

CALDWELL, JUDGE:  Ruan Transportation ("Ruan") petitions for review of a

Workers' Compensation Board ("WCB") opinion affirming an administrative law

judge ("ALJ") decision awarding benefits to David Grier ("Grier").  We affirm.

## FACTS AND PROCEDURAL HISTORY

Grier was working for Ruan as a flatbed truck driver during the summer of 2018. As part of his work duties, he had to secure loads to the trucks with chains and to use tarps to protect the loads. Chains could weigh 25 to 40 pounds and tarps could weigh 85 to 100 pounds.

On July 31, 2018, Grier reportedly suffered pain in his right shoulder when trying to retrieve chains from a truck. The chains had become stuck and then suddenly broke free resulting in a "pop" in Grier's right shoulder and Grier's stumbling backward. Grier did not seek medical attention at that time. He continued working for Ruan and took over-the-counter medicine for pain.

On August 21, 2018, his right shoulder pain became more severe after tarping a load and dropping a trailer by cranking dolly legs and pulling the fifth wheel pin. On August 23, Grier sought treatment at an immediate care center, which referred him to an occupational medicine practice.

The occupational medicine provider then referred Grier to orthopedic specialist Dr. Ryan Krupp, who saw Grier beginning about August 29. Dr. Krupp ordered that Grier not work until an MRI (magnetic resonance imaging) could be performed. In late September, the MRI was performed and showed that Grier had

avascular necrosis (bone tissue loss or decay caused by cutting off the blood supply) of the proximal humerus (upper arm/shoulder joint area).[1]

In medical treatment notes, Dr. Krupp expressed an opinion that Grier's avascular necrosis did not result from the "acute injury" Grier had suffered that summer. But Dr. Krupp also opined that the acute injury aroused the previously dormant condition (avascular necrosis) into a symptomatic reality:

> We discussed at length that it is unlikely his acute injury caused the avascular necrosis but based on his history it did cause his symptoms to become asymptomatic [sic] reality and exacerbate his underlying condition including possibly worsening the overall condition of the shoulder.

(Original Record of the WCB, [hereinafter "R."] at p. 66.) Dr. Krupp placed restrictions on Grier's activities and recommended a right shoulder replacement.

In October 2018, Dr. Michael Best (an orthopedic surgeon) performed an independent medical examination ("IME") on Grier as requested by Ruan. Dr. Best opined that Grier's avascular necrosis was probably caused by his using prescription steroidal medicines to treat asthma and was not caused by a work-related injury. But Dr. Best also opined: "The work injury caused an aggravation

---

[1] According to the Mayo Clinic website, "Avascular necrosis is the death of bone tissue due to a lack of blood supply." https://www.mayoclinic.org/diseases-conditions/avascular-necrosis/symptoms-causes/syc-20369859 (last visited Sept. 21, 2021). The humerus is "the long bone of the upper arm or forelimb extending from the shoulder to the elbow." https://www.merriam-webster.com/dictionary/humerus (last visited Sept. 21, 2021). The "proximal" end of the humerus joins with the scapula to form the shoulder joint according to https://medical-dictionary.thefreedictionary.com/humerus (last visited Sept. 21, 2021).

of the preexisting condition, bringing it to disabling reality and requiring the surgical procedure–Total shoulder replacement." (R., p. 256.)

Grier, who is right-handed, underwent the right shoulder replacement surgery in January 2019. He was unable to work or to use his right arm for several months afterwards. He developed pain in his left shoulder and underwent left shoulder replacement surgery in July 2019. In the latter months of 2019, Grier submitted to two IMEs–one requested by his counsel and one requested by Ruan.

Dr. Richard T. Holt examined Grier on Grier's counsel's request in October 2019. He noted that Grier's left shoulder surgery was not related to "the work accident." (R., p. 125.) He opined that Grier continued to suffer loss of motion related to Grier's July 2018 work injury. He believed Grier had pre-existing avascular necrosis, which was asymptomatic and dormant before the July 2018 incident. He found Grier to be at maximum medical improvement ("MMI") but unable to return to the type of work he performed at the time of injury. He issued restrictions on Grier's activities, including lifting and reaching. He initially found Grier to have a 27 percent whole person impairment ("WPI") but later revised this down to 18 percent for the right shoulder.

Dr. Best again examined Grier at Ruan's request in December 2019. Dr. Best also found Grier to be at MMI. Noting that Grier eventually required replacement of both shoulders due to avascular necrosis, Dr. Best believed that

-4-

Grier's avascular necrosis in both shoulders was not due to the work incident but was solely due to his having taken steroidal medicines for asthma. Dr. Best stated that "within reasonable medical probability, causation was not the work-related event described as occurring on July 31, 2018." (R., p. 154.) And he found "no permanent impairment directly and causally related to the work event of July 31, 2018." (R., p. 155.)

In February 2020, Grier's treating physician, Dr. Krupp, found Grier to be at MMI. Dr. Krupp assessed Grier as having a seventeen percent (17%) whole person impairment. He restricted Grier from lifting objects over 25 to 30 pounds, pushing or pulling anything greater than 25 to 30 pounds, occasional repetitive pushing or pulling for more than four hours a day, and occasional work over the shoulder level for over two hours per day.

Grier did not return to work at Ruan. Instead, he returned to truck driving for a different company at a job which does not involve flatbed work and does not require his loading or unloading a truck. The new job accommodates Grier's work restrictions. However, the pay is lower than Grier's pay was at Ruan. The parties stipulated that Grier had an average weekly wage of $1,200 at Ruan. Grier testified he earned $200 a day at his new job ($1,000 for a five-day work week)–less than the $280 per day he previously earned at Ruan.

In March 2020, Grier filed an Application for Resolution of a Claim–Injury. Ruan failed to file a Form 111 responding to Grier's claim within 45 days. However, both parties presented proof to the ALJ, who conducted an evidentiary hearing in August 2020.

In October 2020, the ALJ issued a decision awarding Grier permanent partial disability ("PPD") benefits based on 17% whole person impairment and utilizing the three-multiplier in Kentucky Revised Statutes ("KRS") 342.730(1)(c)1. ("If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three (3) times the amount otherwise determined . . . .").

The ALJ also awarded medical expenses and temporary total disability benefits for a specified period to Grier. Upon Ruan's motion for reconsideration, the ALJ issued additional findings of fact concerning work-relatedness and application of the three-multiplier.

In February 2021, the WCB affirmed the ALJ's decision. Ruan then filed a petition for review with this Court.

**STANDARD OF REVIEW**

"The function of further review of the WCB in the Court of Appeals is to correct the Board only where the the [sic] Court perceives the Board has

-6-

overlooked or misconstrued controlling statutes or precedent, or committed an error in assessing the evidence so flagrant as to cause gross injustice." *Western Baptist Hosp. v. Kelly*, 827 S.W.2d 685, 687-88 (Ky. 1992).

## ANALYSIS

In its petition for review, Ruan asserts that the WCB erred in affirming the ALJ for two reasons: 1) the ALJ's finding of work-relatedness not being supported by substantial evidence and case law, and 2) the ALJ's enhancement of the award by the three-multiplier being erroneous under authority such as *Fawbush v. Gwinn*, 103 S.W.3d 5 (Ky. 2003). We disagree and affirm.

### 1) WCB Properly Affirmed the Finding of Compensability as Supported by Substantial Evidence and Not Contrary to Controlling Precedent

Ruan begins its argument by asserting: "As this Court well knows, before finding compensability, an ALJ must find that in all 'medical probability' a 'harmful change in the human organism' has occurred." (Petition for Review, p. 5.) Some citation to supporting authority would be preferable to making assumptions about the Court's knowledge.

Nonetheless, an injury is defined under our worker's compensation statutes as "any work-related traumatic event or series of traumatic events, including cumulative trauma, arising out of and in the course of employment which is the proximate cause producing a harmful change in the human organism evidenced by objective medical findings." KRS 342.0011(1). And precedent

-7-

holds that medical causation must be proven to a reasonable medical certainty and that medical opinions should be stated to a reasonable medical certainty. *See Ford Motor Co. (LAP) v. Curtsinger*, 511 S.W.3d 922, 926-27 (Ky. App. 2017).

Ruan notes that the WCB accepted the ALJ's finding of a compensable, work-related right shoulder injury based on the opinions of Drs. Krupp and Holt, and the initial opinion of Dr. Best. Ruan argues this was erroneous, construing Dr. Krupp's opinion to mean that it was only possible and not probable that work events caused a worsening of Grier's shoulder problems.[2]

Dr. Krupp's notes in medical records state: "We discussed at length that it is unlikely his acute injury caused the avascular necrosis but based on his history it did cause his symptoms to become asymptomatic [sic] reality and exacerbate his underlying condition including possibly worsening the overall condition of the shoulder." (R., p. 66.)

---

[2] From our review of the administrative record, Ruan made the same argument about Dr. Krupp's opinion not being stated in terms of probability but instead to a possibility in his brief to the WCB. However, we did not come across this particular argument in its brief to the ALJ or in its petition for reconsideration to the ALJ. The WCB noted an argument by Ruan that "Dr. Krupp's opinion does not amount to medical probability" based on Dr. Krupp's alleged failure to distinguish between the non-work-related left shoulder condition and the right shoulder condition. (Page 13 of WCB Opinion entered February 5, 2021, attached as Appendix 1 to Petition for Review, R., p. 383.) But the WCB did not otherwise explicitly discuss the "possibility" versus "probability" issue about Dr. Krupp's opinion in affirming the ALJ's finding of work-relatedness and compensability as supported by substantial evidence–including Dr. Holt's opinion and Dr. Best's initial opinion as well as Dr. Krupp's opinion.

Despite the reference to "possible" worsening of overall shoulder condition, Dr. Krupp also expresses an opinion that based on Grier's history, the acute injury "**did cause** his symptoms to become asymptomatic [sic][3] reality and exacerbate his [Grier's] underlying condition" of avascular necrosis." (R., p. 66) (emphasis added). Although Dr. Krupp's somewhat informal notes do not utilize the formal "to a reasonable medical certainty" language, his statement that the injury "did cause" a symptomatic reality is framed as not just a possibility or even a probability but as a certainty. And it may be reasonable to construe the "possibly" term to refer to the overall shoulder condition but not specifically to the avascular necrosis whose arousal resulted in a symptomatic, disabling reality.

Furthermore, disregarding any lack of reasonable medical probability statement in Dr. Krupp's notes, Dr. Holt formally stated that his medical opinions were all to a reasonable medical certainty in his report. Like Dr. Krupp, Dr. Holt opined that the work incident aroused a previously dormant condition to a disabling reality. And though Dr. Best later changed his initial opinion after Grier later required left shoulder replacement surgery as well, Dr. Best's initial opinion–certified to a reasonable medical certainty (R., p. 257)–was that Grier's pre-existing, previously asymptomatic avascular necrosis was aroused into a disabling

---

[3] Although we have quoted from the medical records as they appear in the administrative record, in context Dr. Krupp's notes signify that the acute injury caused the underlying condition to become a symptomatic reality rather than "asymptomatic reality."

reality by the work incident. (R., p. 256 ) ("The work injury caused an aggravation of the preexisting condition, bringing it to disabling reality and requiring the surgical procedure–Total shoulder replacement").[4]

The ALJ specifically found Dr. Holt's opinion and Dr. Best's initial opinion from October 2018–both expressed to a reasonable medical probability–to support a finding that Grier's disabling right shoulder condition was work-related and explained why she did not accept Ruan's arguments to the contrary:

> Ruan argues Grier's right shoulder condition is not work-related. Ruan notes Grier suffers from bilateral shoulder avascular necrosis. Also, Grier underwent bilateral shoulder replacements for his avascular necrosis. This ALJ considered Ruan's arguments, but was not persuaded.
>
> First, Grier did not seek treatment for right shoulder complaints in the months or years leading up to the July 31, 2018 work accident. This lends credence to Drs. Holt and Krupp's opinions that Grier's right shoulder avascular necrosis was aggravated by the work injury into a symptomatic and disabling reality. Also, this coincides with Dr. Best's initial opinion addressing causation.
>
> This ALJ notes Grier developed left shoulder symptoms while convalescing from his right shoulder replacement. However, this does not denigrate Grier's claim. He experienced an acute event at work on July 31,

---

[4] Work-related aggravation of a pre-existing dormant condition into a disabling reality is compensable. *McNutt Construction/First Generation Services v. Scott*, 40 S.W.3d 854, 859 (Ky. 2001) ("Where work-related trauma causes a dormant degenerative condition to become disabling and to result in a functional impairment, the trauma is the proximate cause of the harmful change; hence, the harmful change comes within the definition of an injury.").

2018, and his right shoulder symptoms persistented [sic] thereafter. This is evidenced by the August 23, 2018 treatment note, which noted right shoulder pain for the previous three weeks. Thus, the treatment records also support Dr. Krupp's and Holt's causation opinion. As a result, this ALJ finds Grier's current right shoulder condition is related to the July 31, 2018 work injury.

(Page 6 of ALJ Opinion, Award & Order attached as Appendix 5 to Petition for Review–hereinafter "ALJ decision," also found at R., p. 327.)

Regardless of any shortcomings in Dr. Krupp's opinion, ALJ also found persuasive Dr. Holt's opinion and Dr. Best's initial opinion–both stated to a reasonable medical certainty–on medical causation. So, the ALJ's finding of medical causation was properly supported by medical opinions stated to a reasonable medical probability. Thus, the WCB did not err in affirming the ALJ's findings of work-relatedness as supported by substantial evidence.

Furthermore, as Ruan failed to file a timely Form 111, Grier argues that Ruan essentially admitted that Grier suffered some type of work-related injury. The ALJ construed Ruan's failure to file a timely Form 111 as Ruan's admitting that "Grier sustained a work-related right shoulder injury." (Page 5 of ALJ decision, R., p. 326.) The ALJ noted that Grier still bore the burden of proving the extent of the employer's liability, citing *Gray v. Trimmaster*, 173 S.W.3d 236 (Ky. 2005). Ruan argues that precedent requires it not be held liable under these facts.

Ruan cites to case law concerning workers' compensation claimants with angina to argue that symptoms do not always equate to an injury or harmful change in the human organism. *See American Bakeries v. Hatzell*, 771 S.W.2d 333, 334 (Ky. 1989) (claimant's angina was not a compensable injury as the angina was only a symptom of **non-work-related** heart disease and not a harmful change to the human body: "Hatzell's heart and arteries were in the same condition after the angina pain as they were before the angina pain.").

But although the evidence in *Hatzell* did not support finding angina from non-work-related heart disease to be a compensable injury, the Kentucky Supreme Court distinguished another case where work-related stress aroused non-work-related underlying heart disease into a disabling reality by leading to a heart attack. *See id*. at 334-35 (discussing *Stovall v. Dal-Camp, Inc.*, 669 S.W.2d 531 (Ky. 1984))[5] ("The [*Stovall*] opinion noted the firmly entrenched rule that when work-related stress or exertion arouses a pre-existing nondisabling condition and causes a heart attack, the disability arising from the *heart attack* is compensable. The debilitating effects of angina were not discussed in *Stovall* . . . . *Stovall* does not control. Here, the Board was not convinced that the condition was work-related in any way. Hatzell could not prove that but for his work, he would not

---

[5] *Stovall* addressed issues regarding apportionment of liability between the employer and the then-extant Special Fund. *See generally Stovall*, 669 S.W.2d at 534-35.

-12-

have had this underlying heart disease. The underlying disease is coincidental to the work and is not derived therefrom.").

Here, the medical evidence appears undisputed that Grier had a pre-existing non-work-related condition of avascular necrosis. And while Dr. Best disagreed in his latter (2019) report, other physicians opined that the summer 2018 work incident aroused this previously dormant, asymptomatic condition into a disabling symptomatic reality. In light of the conflicting medical evidence, the ALJ as the finder of fact had the right to determine which medical experts' opinions she found to be most credible. *See Voith Industrial Services, Inc. v. Gray*, 516 S.W.3d 817, 822 (Ky. App. 2017) (ALJ alone had right to consider conflicting evidence–lay and medical–and judge its weight and credibility); *see also* KRS 342.285(2) (WCB may not substitute its judgment for ALJ's weighing of evidence on questions of fact).

While Ruan may claim that Grier's right shoulder problems were only symptoms and not a harmful change to Grier's body caused by his work, there is substantial evidence–medical opinions–to support the ALJ's finding that an acute work incident caused a harmful change by arousing a previously dormant, asymptomatic condition into a symptomatic and disabling reality. Thus, the WCB did not err in affirming the ALJ's finding of a compensable, work-related injury. *See Special Fund v. Francis*, 708 S.W.2d 641, 643 (Ky. 1986) ("When the decision

-13-

of the fact-finder favors the person with the burden of proof, his only burden on appeal is to show that there was some evidence of substance to support the finding, meaning evidence which would permit a fact-finder to reasonably find as it did.").

Having carefully reviewed the record and the applicable law, we do not perceive that the WCB overlooked or misconstrued statutes or precedent or committed a flagrant error in assessing the evidence resulting in a gross injustice by affirming the ALJ's finding of a work-related, compensable injury. *See Kelly*, 827 S.W.2d at 687-88. Thus, we affirm on this issue.

### 2) WCB Properly Affirmed Three-Multiplier Enhancement

Ruan argues that the WCB erred in affirming the ALJ's application of the three-multiplier to enhance Grier's PPD benefits and should have at least vacated the ALJ's decision with directions to perform a *Fawbush v. Gwinn* analysis to determine if application of the two-multiplier would have been appropriate instead. We disagree.

KRS 342.730(1)(c) sets forth how to determine the amount and duration of PPD payments. KRS 342.730(1)(c) provides in pertinent part that in certain situations, the amount of a PPD payment should be enhanced by multiplying the amount otherwise available by two or three:

> 1. If, due to an injury, an employee does not retain the physical capacity to return to the type of work that the employee performed at the time of injury, the benefit for permanent partial disability shall be multiplied by three

-14-

(3) times the amount otherwise determined under paragraph (b) of this subsection, but this provision shall not be construed so as to extend the duration of payments; or

2. If an employee returns to work at a weekly wage equal to or greater than the average weekly wage at the time of injury, the weekly benefit for permanent partial disability shall be determined under paragraph (b) of this subsection for each week during which that employment is sustained. During any period of cessation of that employment, temporary or permanent, for any reason, with or without cause, payment of weekly benefits for permanent partial disability during the period of cessation shall be two (2) times the amount otherwise payable under paragraph (b) of this subsection. This provision shall not be construed so as to extend the duration of payments.

The ALJ found that application of the three-multiplier in KRS 342.730(1)(c)1. was appropriate as Grier "does not have the capacity to perform his pre-injury work." (Page 1 of ALJ Order on reconsideration entered 11/6/2020 attached as Appendix 2 to Petition for Review , R., p. 339.) She explained in detail in her order on reconsideration how she came to this conclusion, noting how two physicians found that Grier was no longer able to lift over 30 pounds and that his flatbed trucking job at Ruan required him to lift over 30 pounds. She also explained that Dr. Krupp could best determine Grier's capabilities as his treating physician and that the lifting Grier performed in his pre-injury work exceeded Dr. Krupp's restrictions. Even though Grier has returned to truck driving generally, there is substantial evidence to support the ALJ's finding that he is unable to

-15-

perform the specific type of work he previously performed–the more physically demanding flatbed truck driving job which entails heavy lifting he is no longer able to perform and which pays higher wages than less physically demanding jobs.

The ALJ's finding that Grier could not return to the same type of work as he performed prior to his injury is supported by substantial evidence–Grier's testimony and medical opinion testimony from Drs. Krupp and Holt. And it is consistent with precedent such as *Voith*, 516 S.W.3d at 821-22 (three-multiplier enhancement affirmed as claimant returned to janitorial work but could no longer work better-paying jobs involving solvents). *See also Ford Motor Co. v. Forman*, 142 S.W.3d 141, 145 (Ky. 2014) ("When used in the context of an award that is based upon an objectively determined functional impairment, 'the type of work that the employee performed at the time of injury' was most likely intended by the legislature to refer to the actual jobs that the individual performed.").

The ALJ also found that it would not be appropriate to apply the two-multiplier in KRS 342.730(1)(c)2. as Grier was not earning the same as or more than his pre-injury average weekly wage upon his return to work at another job:

> Most recently, Grier obtained a job as a box truck driver, and his restrictions are being accommodated. He earns $200 a day, which produced a weekly wage of $1000. This is less than his pre-injury averaged weekly wage. More importantly, his current earnings are not the same and do not exceed his pre-injury average weekly wage. Thus, there is no indication for a two multiplier analysis.

(Page 9 of ALJ decision, R., p. 330.)

As it argued to the WCB, Ruan argues to this Court that Grier's current average weekly wage of $1,000 is similar to his stipulated pre-injury average weekly wage of $1,200–especially given pandemic-related reductions in many workers' wages. It also contends that Grier was going to require shoulder replacement anyway regardless of the July 2018 injury due to avascular necrosis and that Grier could increase his wages by working more days or utilizing other skill sets used in prior jobs–such as acting as a driver manager. And it claims truck drivers' wages historically rise quickly over time.

Yet despite Ruan's speculation that Grier could earn more money in the future or that he might have eventually required right shoulder replacement anyway, substantial evidence supports the finding that Grier suffered a workplace injury causing an arousal of his avascular necrosis into a disabling reality–as we previously discussed. And except for Grier's initially working three weeks at Ruan after the July 2018 incident before seeking medical treatment for his pain, Ruan has not pointed to any evidence that Grier actually earned equal or greater wages after his injury.

Despite the lack of evidence that Grier actually earned equal or greater wages after returning to employment, Ruan contends that the WCB erred in affirming the ALJ's application of the three-multiplier without performing a

*Fawbush v. Gwinn* analysis to consider whether the two-multiplier would have been more appropriate. We disagree and adopt the WCB's analysis on this issue.

The WCB noted that the Kentucky Supreme Court held that the ALJ should determine whether the three-multiplier or the two-multiplier is more appropriate to the facts at hand–**in situations in which both are applicable to a claim**. *Fawbush*, 103 S.W.3d at 12. And the Supreme Court indicated that use of the three-multiplier in KRS 342.730(1)(c)1. for the claimant's not being able to return to his/her pre-injury type of work is appropriate in situations where the claimant **temporarily** earns equal or greater wages if the evidence indicates that the "worker is unlikely to be able to continue earning a wage that equals or exceeds the wage at the time of the injury for the indefinite future . . . ." *Id.* But when the evidence does not support the possible application of both the three-multiplier and the two-multiplier–such as here where there is no evidence that the claimant has **actually** been earning equal or greater wages upon returning to work–there is no need to perform a formal, multi-factor *Fawbush* analysis:[6]

> The Fawbush analysis is only required when both the
> two-multiplier and the three-multiplier are applicable. In
> this instance, the parties stipulated to a pre-injury AWW

---

[6] Where a *Fawbush* analysis is required, the ALJ must consider "a broad range of factors, only one of which is the ability to perform the current job." And ultimately, the ALJ must consider "whether the injury has permanently altered the worker's ability to earn an income." *Voith*, 516 S.W.3d at 821 (quoting *Adkins v. Pike County Bd. of Educ.*, 141 S.W.3d 387, 390 (Ky. App. 2004) and *Adams v. NHC Healthcare*, 199 S.W.3d 163, 168 (Ky. 2006)). But as explained in the body of this Opinion and in the WCB's opinion, there was simply no need to perform a multi-factor *Fawbush* analysis here.

[average weekly wage] of $1,200.00. The ALJ determined Grier's post-injury AWW is $1,000.00, less than his pre-injury AWW. Grier filed his post-injury weekly wages, supporting the ALJ's post-injury AWW determination. Grier testified he currently works Monday through Friday, earning $200.00 per day, $1,000.00 per week. Since Grier never returned to work at equal or greater wages subsequent to his work injury, the two-multiplier is not currently applicable, and the ALJ was not required to perform a Fawbush analysis.

(Page 20 of WCB opinion attached as Appendix 1 to Petition for Review, R., p. 390.) Having carefully examined the record and the applicable law, we do not perceive that the WCB overlooked or misconstrued statutes or precedent or that it committed any error in assessing the evidence so flagrant as to result in gross injustice by affirming the ALJ's application of the three-multiplier here. *See Kelly*, 827 S.W.2d at 687-88. Thus, we affirm on this issue as well.

Any other arguments or issues raised in the parties' briefs which we have not discussed herein have been determined to lack merit or relevancy to our resolving the petition for review before us.

## CONCLUSION

For the reasons stated therein, we affirm the WCB.

ALL CONCUR.

BRIEF FOR APPELLANT:

Walter E. Harding
Louisville, Kentucky

BRIEF FOR APPELLEE DAVID
GRIER:

Paul A. Brizendine
Jeffersonville, Indiana